INDEPENDENT SCHOOL DISTRICT, CLASS A, NUM-
BER ONE, in Cassia County, Respondent, v. E. W.
PORTER, Commissioner of Finance of the State of
Idaho, Substituted for J. G. FRALICK, Commissioner
of Finance and Industry of the State of Idaho, Appel-
lant.

[228 Pac. 253.]

BANKS AND BANKING—INSOLVENCY—RECEIVER—GENERAL AND SPECIAL
DEPOSITS — PREFERRED CLAIM—INDEPENDENT SCHOOL DISTRICT —
FUNDS—CONTRACTS—NOVATION.

1.   Assent of all parties to a contract is necessary to constitute
a novation. A new promise from the substituted debtor and a
release of the claim against such substituted debtor, the consent
of the original debtor and the consent of the original creditor
are essential elements of the novation.

2.   *Held,* under the facts of this case that failure of assent or
acquiescence of parties to contract and noncompliance with pro-
visions of chapter 256, 1921 Sess. Laws, precluded novation.

3.   Where a special deposit was made by an independent school
district in one bank, which was thereafter consolidated and taken
over and operated by another bank, the latter subsequently be-
coming insolvent, the character of such deposit was not changed
in the absence of an express agreement to that effect, acquiesced
in and assented to by such school district and it was entitled to
be listed for payment with the receiver as a preferred claim under
subd. 2, sec. 13, chap. 42, 1921 Session Laws.

APPEAL from the District Court of the Eleventh Judi-
cial District, for Cassia County. Hon. T. Bailey Lee, Judge.

Action to establish a preferred claim. Judgment for
plaintiff. *Affirmed.*

Hodgin, Stephan & North for Appellant.

There was an agreement between the parties whereby the
Commercial State Bank took over the assets and assumed the
liabilities of the Burley State Bank.

The new agreement constituted a novation. (4 Page on Contracts, sec. 2498, and authorities cited.)

Chapter 42 and chapter 256 of the 1921 Session Laws became a part of the new agreement. (*Fidelity State Bank v. North Fork Highway Dist.*, 35 Ida. 797, 209 Pac. 449; *Long v. Owen*, 21 Ida. 243, Ann. Cas. 1913D, 465; 121 Pac. 99; 6 R. C. L. 885; 13 C. J. 560.)

When the account was taken over by the Commercial State Bank under the new agreement it became a general deposit. (Secs. 24–30, chap. 256, 1921 Sess. Laws.)

Even though it be held that the deposits in the Commercial State Bank were in violation of law, still respondent would not be entitled to the priority claimed. (Subd. 3, sec. 13, chap. 42, 1921 Sess. Laws.)

When a general deposit is made the relation of debtor and creditor is created, no trust relation can arise, and public funds so deposited will not be declared to be trust funds. (22 R. C. L., p. 223; *In re State Treasurer Settlement*, 51 Neb. 116, 70 N. W. 532, 36 L. R. A. 746; *United States Fidelity & Guaranty Co. v. City of Pensacola*, 68 Fla. 357, Ann. Cas. 1916B, 1236, 67 So. 87.)

The funds in controversy were trust funds and were not the property of either the Burley State Bank or the Commercial State Bank. (*Fidelity State Bank v. North Fork Highway Dist.*, 35 Ida. 797, 209 Pac. 449; *In re Bank of Nampa*, 29 Ida. 166, 157 Pac. 1117; *State v. Thum*, 6 Ida. 323, 55 Pac. 858; *First Nat. Bank v. C. Bunting & Co.*, 7 Ida. 27, 59 Pac. 929, 1106.)

This fund being impressed with a trust, such trust follows it so long as it can be traced. (3 R. C. L. 555, and authorities cited.)

The Burley State Bank had no authority to make a deposit of these funds in the Commercial State Bank, either express or implied, as they were trust funds. (*Patek v. Patek*, 166 Mich. 446, 131 N. W. 1101, 35 L. R. A., N. S., 461.)

The alleged new agreement between Burley State Bank and Commercial State Bank did not constitute a novation,

for the reason that the respondent did not agree thereto. (4 Page on Contracts, sec. 2498.)

Chapter 42, Session Laws 1921, is unconstitutional and void in so far as it purports to affect this deposit. (*Fidelity State Bank v. North Fork Highway Dist., supra.*)

Morris & Griswold and B. P. Howells, for Respondent.

ENSIGN, District Judge.—This is an action brought by the respondent, Independent School District, Class A, No. 1, in Cassia county, in accordance with the provisions of sec. 2, page 60, chap. 42, Sess. Laws 1921, to enforce a trust in the sum of $21,518.18, upon the general fund and estate of the insolvent Commercial State Bank of Burley, Idaho, and now, under the provisions of said chap. 42, in the hands and under the direction and control of the appellant, commissioner of finance and industry of the state of Idaho, and to require said appellant to forthwith proceed to list said claim for payment out of the funds of said Commercial State Bank under subd. 2, sec. 13, of said chap. 42, and to pay said claim in its order of priority. Upon the hearing of the matter before this court, and upon motion of appellant the name of E. W. Porter was substituted for that of J. G. Fralick, as commissioner of finance and industry.

The facts in this case were stipulated, and are in substance as follows:

1. Plaintiff now is and at all times herein mentioned was a body corporate, organized and existing for school purposes, under and by virtue of the laws of the state; that prior to the passing of chap. 215, Sess. Laws 1921, plaintiff was a body corporate organized and existing for school purposes under and by virtue of the laws of the state, under the name of Burley Independent School District No. 1 of Cassia County, and that the plaintiff is the successor in interest of said Burley School District No. 1.

2. That the defendant, J. G. Fralick, now is and at all times hereafter mentioned was the duly appointed, qualified and acting commissioner of commerce and industry of the state of Idaho.

3. That the Burley State Bank of Burley, Idaho, on January 17, 1921, and for a long time prior thereto, was a corporation organized and existing under and by virtue of the laws of the state of Idaho; that the said Burley State Bank was engaged in and conducting a general banking business in the state of Idaho, with its principal place of business at Burley, Cassia county; that on January 17, 1921, the said Burley State Bank closed its doors and suspended payment, at which time, and ever since, such bank has been and now is insolvent.

4. That the defendant, J. G. Fralick, commissioner of commerce and industry, on January 17, 1921, took possession of the assets and business of said Burley State Bank, as required by law.

5. That on January 17, 1921, the plaintiff herein had on special deposit in the said Burley State Bank, in the name of Burley Independent School District No. 1, subject to withdrawal by said plaintiff upon its check, the sum of $22,147,21, which said funds were the property of this plaintiff and were obtained for general school purposes within said school district, and said sum stood to the credit of this plaintiff on the books of said Burley State Bank at the date said bank was closed, to wit, January 17, 1921.

6. That thereafter on or about May 20, 1921, the Commercial State Bank was duly organized and charter granted thereto by the state of Idaho, and said Commercial State Bank now is, and at all times since has been, a domestic corporation; that thereafter on May 28, 1921, the said Commercial State Bank, acting by and through its duly authorized board of directors, "unanimously adopted" a resolution to the effect that it be proposed to the directors of the Burley State Bank that the Commercial State Bank take over all the assets of said Burley State Bank, and in consideration thereof that the former will assume, agree to pay and pay the liabilities of the latter as shown by its books; that the Burley State Bank accepted said offer and empowered its officers to deliver to the Commercial State Bank all of its assets, and that the proper officers of the Commercial

State Bank, in accordance with the agreement, took possession of the same.

7. That thereafter, and on June 6, 1921, the said Commercial State Bank opened its doors for business at Burley, Idaho, up to and including the 8th day of December, 1921, on which date said bank was by its officers placed in the hands of said commissioner of commerce and industry under the provisions of chap. 42, Sess. Laws 1921, and during all of the time since and now is in his hands and under his control.

8. That the records of said Commercial State Bank, from June 6, 1921, to December 8, 1921, show that said Independent School District, the plaintiff and respondent in this case, maintained an account with said bank, to wit: A debit in the sum of $1,264.50 of date of August 21, 1921, representing· the face of a certain warrant issued by said school district to Mr. A. C. Fouts, which warrant, at the time of said debit, had not been called by said school district; certain debits to said account in the sums of $425, $420, $15, $15, and $118.01, respectively, between December 3, and December 8, 1921, inclusive, representing checks drawn on said account by said school district; certain items for interest accrued between the dates of August 11, 1921, and November 1, 1921, and two items of credit in the sums of $708.88 and $425, respectively, of dates of December 1, 1921, and December 3, 1921, representing actual deposits by said school district in said bank.

9. That on or about June 1, 1921, said Commercial State Bank executed a bond, with several sureties, for the purpose of securing the deposit of said school district in said bank, and that some time between June 1, 1921, and August 8, 1921, said bond was delivered by said bank to the board of trustees of said school district; that prior to August 8, 1921, said board of trustees delivered said bond to their attorneys for an opinion as to its legality and on August 6, 1921, said attorneys rendered an opinion to the effect that said bond was insufficient in amount and that there was no justification of the sureties thereto, and advising said board

of trustees, in conformity with certain statutory provisions, to make proper investigation of the security offered by said bank, before accepting the same; that said bond was returned by said school district to said bank for correction; that said bond is attached to the stipulation as exhibit "A" and appears to be in the sum of $25,000, whereas the minutes of said bank show the same to be in the sum of $22,000; that the records of said bank do not show that said bond was again presented to the trustees of said school district after being corrected, or that any other bond was thereafter submitted to said school district, nor do the records of said school district show that the bond submitted as aforesaid was ever approved by said district.

10. That on May 20, 1922, the plaintiff and respondent school district presented its unpaid claim to the defendant and appellant for the amount it had on deposit in said Burley State Bank on the date said bank passed into the hands and under the control of appellant, and in which claim no request for specific classification, as provided by law, was made. On August 1, 1922, appellant notified respondent in writing that said claim had been allowed in the sum of $21,518.39, and had been given priority under subd. 3, sec. 13, chap. 42, Sess. Laws 1921; that on October 7, 1922, respondent presented to appellant an amended creditor's claim and demanded that it be given priority under subd. 2 of said section and chapter, and that thereafter on October 9, 1922, appellant notified respondent of his refusal to comply with respondent's demand, and still refuses and fails to classify said claim as requested by respondent.

The cause was tried by the court without a jury, and judgment rendered for respondent in accordance with the prayer of its complaint, from which judgment this appeal is prosecuted.

The following assignments of error are made by appellant:

I. The court erred in its conclusions of law numbers 1, 2, and 3, as follows:

"1. That the funds of the plaintiff in the defendant's hands in the sum of $21,518.18 constitute a trust fund, and

as such should be listed for payment out of the funds of the Commercial State Bank as a claim of the class specified in subd. 2, sec. 13, chap. 42, Sess. Laws of 1921.

"2. That the defendant be ordered to so list said claim and pay the same in said order of priority.

"3. That the plaintiff is entitled to its costs in this action and it is ordered that judgment be entered accordingly."

II.  The court erred in rendering judgment against the defendant and appellant.

It is the contention of the appellant that, upon the organization of the Commercial State Bank, the agreement to take over the assets and liabilities of the Burley State Bank, referred to in the stipulation of the facts herein, changed the character of respondent's deposit from that of a special deposit in the Burley State Bank to that of a new and general deposit in the Commercial State Bank; that said funds being a general deposit were therefore not impressed with a trust, but, on the contrary, became the property of the new depository to be handled by the bank in its general business of banking subject to respondent's check as in the case of other general deposits; that the relation of debtor and creditor was created between the Commercial State Bank and respondent; that chap. 42, Sess. Laws 1921, enacted subsequent to the assumption of control of the Burley State Bank by appellant and prior to the organization of the Commercial State Bank, became a part of said agreement, and that said agreement, as shown by the facts in connection therewith, constitute a novation.

It is the contention of respondent that no change in the character of respondent's special deposit in said Burley State Bank took place upon the organization of the Commercial State Bank and the accompanying agreement between the directors of said banks to take over the assets and liabilities of the former institution; that the Burley State Bank was without authority to make a deposit of this fund in the Commercial State Bank, either express or implied, the same being a trust fund; that respondent had a vested right in this fund which was impressed with a trust; that

the status of said fund being fixed at the time of its deposit in the Burley State Bank, and such status being that of a trust fund, such trust follows the fund into the hands of the Commercial State Bank and its successor, the appellant commissioner; that chap. 42, enacted subsequent to the insolvency of the Burley State Bank and the closing of its doors and prior to the organization of the Commercial State Bank, did not become a part of said agreement, and is unconstitutional and void in so far as it purports to affect this deposit; that a novation was not created by the agreement referred to for the reason that the respondent school district was not a party to the same, and for the further reason that the trustees of said respondent school district were without authority to sanction said agreement if they so desired.

It is conceded by the stipulation referred to that the original deposit of respondent school district in the Burley State Bank, although unlawfully made, was a special deposit, and was such at the time of the closing of the doors of said bank on January 17, 1921. It has heretofore been held by this court that, prior to the enactment of chap. 42, although public moneys were deposited other than upon special deposit, they remained nevertheless a trust fund, and in case of the insolvency of the bank it was the duty of the receiver to treat such funds as a trust fund and the property of the true owners; that the funds represented by said deposit were preferred and payable out of the assets of the bank, prior to the payment of depositors, stockholders or other creditors of the insolvent bank, and that such creditors were not to share *pro rata* in the public moneys so deposited. (*State v. Thum*, 6 Ida. 323, 55 Pac. 858; *First Nat. Bank v. C. Bunting & Co.*, 7 Ida. 27, 59 Pac. 929, 1106; *Fidelity State Bank v. North Fork Highway Dist.*, 35 Ida. 797, 209 Pac. 449.)

It was further held by this court "that chapter 42, Session Laws of 1921, is unconstitutional and void in so far as it purports to affect or is sought to be applied to contracts of deposit of funds of municipal corporations made before its enactment, so as to impair the obligations of such con-

tract.'' (*Fidelity State Bank v. North Fork Highway Dist., supra.*)

It seems to us that the controversy in this case may be disposed of by a consideration of appellant's contention that the contract of novation existed between the Burley State Bank, the original depository, and the Commercial State Bank, which succeeded to the assets and liabilities of the former, and the respondent school district, the depositing unit, by which said contract or agreement the character of respondent's deposit in the Burley State Bank changed from that of a special deposit to that of a general deposit in the Commercial State Bank.

To constitute a valid novation all of the parties thereto must assent. A new promise from the substituted debtor (in this case the Commercial State Bank) and a release of the claim against said substituted debtor, the consent of the original debtor (Burley State Bank) and the consent of the original creditor (respondent school district) are essential elements of the novation. The original obligation owing by the original debtor must be extinguished, and such substitution and discharge may arise or be shown by the circumstances and the conduct of the parties. It is not necessary that the parties should assent to the transaction at the same moment, so long as they finally consent in time. (4 Page on Contracts, sec. 2498; 3 Elliot on Contracts, sec. 1867.)

It is not contended that the trustees of the respondent school district were present at the time of the agreement between the directors of the banks in question, or entered into or acquiesced in the agreement at the same time, but it is urged by appellant that respondent's acquiescence in or consent to the contract of novation is shown by the following circumstances as disclosed by the stipulated facts: That from August 11, 1921, to December 9, 1921, respondent maintained, in addition to the deposit in question, an account with said Commercial State Bank; that interest on daily balances was allowed and credited, new deposits in cash made and checks drawn against said account paid. Also that on or about June 1, 1921, said bank, under the provi-

sions of chap. 42, Sess. Laws 1921, tendered respondent a bond, which bond, upon the advice of respondent's attorneys was returned to said bank for correction, the same in their opinion being insufficient in amount and without proper justification by the sureties thereto.

We do not think the foregoing facts and circumstances relied on by appellant are sufficient to constitute a legal acquiescence or consent by the respondent. Regardless of whatever inference or implication respondent's actions referred to might convey as to its knowledge of the agreement between the two banks and the substitution of the Commercial State Bank as its depository, there are, in our opinion, certain statutory requirements to be complied with before the novation in this case is complete.

Chapter 256, Sess. Laws 1921, known as the "State Depository Law," enacted subsequent to the closing of the Burley State Bank and prior to the organization of the Commercial State Bank, provides for the deposit of public moneys in banks and trust companies engaged in the business of banks of deposit, and among other things, provides the procedure to be followed by which such banks and trust companies may become public depositories, and the conditions and terms under which said moneys shall be deposited, as follows:

"Sec. 9. BANKS ELIGIBLE AS DEPOSITORIES. Any national bank or any state bank or trust company engaged in the business of a bank of deposit in any depositing unit, may become a depository of the public funds thereof by making application therefor to its supervising board and may under the provisions of Section 27 hereof become the depository of other depositing units within the state.

"Sec. 11. SECURITY FOR DEPOSITS. Before designating any bank as a depository, the supervising board shall require it to deposit securities or to give bonds, as in this law provided, for the payment of public moneys to be deposited therein and the interest thereon, which securities and bonds are subject to the approval of the supervising board. When both securities and bonds are given as secu-

rity under the provisions hereof, each class shall be held to contribute its ratable proportion of any loss which the depositing unit may suffer or of any recovery to which it may become entitled.

"Sec. 16. INVESTIGATION OF SECURITIES. All bonds shall be investigated and the sufficiency thereof and the sureties thereon determined as often as once every six months, at a regular or special meeting of the supervising board to be held in April and October each year. Personal bonds shall be renewed every two years. The supervising board may cause an investigation to be made at any time to ascertain the sufficiency of any bond or security offered or given under this law, and to require new or additional security whenever in its judgment the safety of any deposit of public moneys under this law requires it; and such deposit shall be withdrawn unless such new or additional security be given.

"The failure or refusal on the part of the members of a supervising board to investigate the sufficiency of the bonds deposited under the provisions of this act and the sufficiency of the sureties thereon at least twice a year, shall be deemed a misdemeanor and upon conviction thereof, the delinquent members of such board shall be punished by confinement in the county jail for one year."

It will be observed that under the provisions of sec. 9 quoted, the first step in the designation of a public depository is an application for such designation by said depository to the supervising board of the depositing unit. In sec. 11, however, it is provided that before the supervising board grants the application for designation, it must require the applicant to deposit securities or give bonds, as required by law, for the proper protection of such deposit; subject to the approval of the supervising board, and under sec. 16 it becomes the duty of the supervising board to investigate the sufficiency of the securities and bonds offered. While the stipulation does not disclose a formal application by the Commercial State Bank for designation as a depository, it does appear that said bank prof-

fered to respondent a bond which the supervising board of respondent investigated by submitting the same to its attorneys, and thereafter, upon the advice of said attorneys, declined to accept said bond because of the insufficiency of the amount and the failure to justify the sureties thereon; the bond being returned to the bank for correction. This appears to have ended the transaction and nothing further was done by either of the interested parties to comply with the law.

Under the provisions of chap. 256, *supra*, it is clear to our minds that before the Commercial State Bank could become a public depository of the funds of respondent school district and receive the same on general deposit, it was necessary that said bank give to respondent a legal bond, sufficient in amount to protect said funds. Respondent was clearly within its rights, and acting in the proper performance of its duty in its investigation of the security offered, and in rejecting the same if for any reason said security was legally insufficient. It was the duty of said bank under the law to comply with respondent's demand and furnish a proper and acceptable bond or other security in lieu thereof. This the said bank failed to do. Therefore the bank having failed to furnish the security or bond required by chap. 256, *supra*, and such act on its part being a condition precedent to its designation by respondent as a public depository, it follows that there was no legal designation and therefore no such consent or acquiescence on the part of respondent as would in law constitute a novation; said respondent being without authority to sanction it. Therefore said special deposit originally in the Burley State Bank retained its character as such in the Commercial State Bank, and could only be changed from a special deposit to a general deposit by compliance with the provisions of chapter 256, *supra*, as heretofore indicated. As heretofore decided by this court, chapter 42, Sess. Laws 1921, is unconstitutional and void in so far as it purports to effect a change of said fund from a special deposit to a general deposit in said Commercial State Bank; said deposit or fund being im-

pressed with a trust and not the property of either the Burley State Bank or the Commercial State Bank. (*Fidelity State Bank v. North Fork Highway Dist., supra.*) Chapter 42 could in no way affect the character of said fund except by a compliance on the part of the Commercial State Bank and respondent with the provisions of the "State Depository Law," chapter 256, Sess. Laws 1921, as heretofore indicated. The fund being a special deposit and impressed with a trust passed into the hands of the appellant commissioner as such upon his assumption of control of the affairs of said Commercial State Bank.

We have made careful examination of the record and the authorities cited, and conclude that the fund in question, being a trust fund, to wit, the sum of $21,518.18, should be listed for payment out of the funds of said Commercial State Bank as a claim of the class specified in subdivision 2, sec. 13, chap. 42, Sess. Laws 1921.

It is therefore ordered that the judgment of the trial court be affirmed and the costs of this case awarded to respondent.

McCarthy, C. J., and Budge and Wm. E. Lee, JJ., concur.