EDGAR C. LAWSON, *Auditor, etc. v.* L. R. CHARTER, *Com. of Banking, etc.*

(No. 7289)

Submitted March 31, 1932. Decided April 12, 1932.

*H. B. Lee*, Attorney General, and *Rummel, Blagg & Stone,* for relator.

*I. M. Underwood* and *Vinson, Thompson, Meek & Scherr,* for respondents.

HATCHER, PRESIDENT:

The New Martinsville Bank closed its doors, insolvent, on the morning of January 28, 1931, with funds of the state on deposit. This is a proceeding in mandamus to compel the receiver of the bank, in settling its affairs, to prefer the state over all other depositors.

8 Bacon's Abridgment, 91, states that under the common law "where the king's right and that of a subject meet at one and the same time, the king's shall be preferred." While this right was accorded to the king personally, nevertheless it was conceived to be "for the benefit.of the whole nation." The state having acquired the sovereignty which was formerly the king's, acquired also the right of preference over the individual which was incident to royalty under the common law. See *Woodyard* v. *Sayre,* 90 W. Va. 295, 110 S. E. 689; 1 Blackstone 237; 14 R. C. L., 662. The respondent concedes that the state had this right prior to January 1, 1931, but relies on Code 1931, 12-4-10, as abrogating that right. Section 10 follows: "The State shall not, by virtue of prerogative or any other right, have any priority or preference of any claim or demand in its favor which is not made a lien and given such priority and preference by statute, over any other unsecured or common creditor of any person, firm or corporation against the property or assets or any part thereof of the debtor." Incidentally, on the afternoon of January 28, 1931, the legislature postponed the further operation of the above statute until February 1, 1933, by an enactment in effect from passage.

The petitioner says that as far as the statute would affect the deposit in question, the statute is violative of Constitution, Article X, section 6, which provides in part: "The credit of the State shall not be granted to, or in aid of any county, city, township, corporation or person." With a

constitutional provision comparable to ours, the legislature of Idaho attempted by statute to place public deposits in banks on a parity with other deposits. The supreme court of Idaho held the statute unconstitutional in *White* v. *Banking & Trust Co.*, 50 Idaho 589, 595-6, 298 Pac. 933, 935-6, saying:

> "To have such funds placed on general deposit and payable pro rata out of whatever assets of the bank remained after its affairs were wound up subsequent to its being closed for insolvency, and use of such funds in payment of the debts of the insolvent bank, would be pledging the faith and credit of the county to which the funds belonged, in aid of appellant banking corporation, in derogation of the provisions of article 8, sec. 4, and article 12, sec. 4, of the State Constitution. * * * As against the disability of such constitutional prohibitions there is no difference between voluntary and compulsory obligations—'the legislature could no more impose it than the county could voluntarily assume it.' Board of Lake County Commissioners v. Rollins, 130 U. S. 662, 9 S. Ct. 651, 653, 32 L. Ed. 1060; Eaton v. Mimnaugh, 43 Or. 465, 73 P. 754.''

There can be no doubt that the ratable payment of the state's funds would be granting the credit of the state in aid of both the bank and the other depositors. The logic of the Idaho court leaves nothing to be added. We apply it fully to our own statute, which we hold to be inoperative as to the banking deposits of the state's funds.

The writ will issue.

*Writ issued.*