

# THE ATTORNEY GENERAL
# OF TEXAS

PRICE DANIEL
ATTORNEY GENERAL

AUSTIN 11, TEXAS

March 29, 1951

Hon. James B. Pattison, Chairman
Committee on Public Health
House of Representatives
52nd Legislature
Austin, Texas

Opinion No. V-1163

Re: Constitutionality of
committee amendment to
House Bill 151 to es-
tablish a scholarship
program of loans from
State funds to medical
students.

Dear Mr. Pattison:

Your request for an opinion relates to the con-
stitutionality of a law now in effect in the State of
Mississippi which provides for loans and scholarships to
students desiring to study medicine.

You state that House Bill 151 is now being con-
sidered by your committee and that you contemplate sub-
stituting in lieu thereof the Mississippi plan, which for
the purposes of this discussion is designated as House
Bill 431. You desire to know the constitutionality of
such a law under the Texas Constitution.

House Bill No. 431 (Mississippi) provides for
the creation of a board to be known as the State Medical
Education Board and provides for the appointment and the
terms of office of the members thereof. The act provides
for the employment of the necessary personnel to carry
out the terms of such act and provides a procedure for
granting loans or scholarships to students who are bona
fide students and residents of the State of Mississippi
and who desire to become physicians. The purpose of the
loan is to enable an applicant to obtain a standard four-
year medical education which will qualify such applicant
to become a licensed practicing physician and surgeon.
Applicants may receive a loan or scholarship in an amount
not to exceed $5,000.00, to be paid in annual installments
not exceeding $1250.00 per annum. These loans or scholar-
ships are conditioned so that the full amount shall be
repaid to the State of Mississippi, with four per cent
interest from the date of each payment by the State.

Hon. James B. Pattison, page 2 (V-1163)


Section 9 of the proposed House Bill 431 provides that all payments of funds for loans or scholarships thereunder shall be made by requisition of the Board signed by the Chairman and Secretary, and directed to the Auditor of Public Accounts, who shall thereupon issue a warrant on the Treasury of the State of Mississippi for the amount fixed in the requisition and payable to the person designated thereon, which warrant upon presentation shall be paid by the treasurer out of any funds appropriated by the Legislature for the purposes provided for under this act. The purpose and intent of the act was to meet the emergency existing in the State of Mississippi from the shortage of doctors in the State by increasing the number of medical students from Mississippi in the various medical schools and inducing such graduates of medical schools to return to Mississippi for the practice of their profession.

You have informed us that the adaptation of the Mississippi plan as a substitute for House Bill 151 will provide for an appropriation of State funds by the Legislature.

The question presented for determination is whether the proposed bill contravenes the provisions of Section 50 of Article III of the Constitution of Texas, which provides:

"The Legislature shall have no power to give or to lend, or to authorize the giving or lending, of the credit of the State in aid of, or to any person, association or corporation, whether municipal or other, or to pledge the credit of the State in any manner whatsoever, for the payment of the liabilities, present or prospective, of any individual, association of individuals, municipal or other corporation whatsoever."

In Bannock County v. Citizens Bank & Trust Co., 53 Idaho 159, 22 P.2d 674, 680 (1933), the Supreme Court of Idaho was construing the provisions in the Idaho Constitution which said that no county shall "lend, or pledge the credit or faith thereof" or "loan its credit" to any individual, association, or corporation. The court stated:

"In interpreting the sections of the Constitution in question, the language employed must be taken and understood in

its natural, ordinary, general, and popu-
lar sense. . . . In the popular sense,
lending or loaning money or credit is at
once understood to mean a transaction
creating the customary relation of borrow-
er and lender, in which the money is bor-
rowed for a fixed time, and the borrower
promises to repay the amount borrowed at
a stated time in the future, with inter-
est at a fixed rate. And that is the
sense, then, in which the language em-
ployed in those sections must be under-
stood, and so understood, no county, for
example, shall lend or pledge its credit
or faith, directly or indirectly, or in
any manner which would create the custo-
mary relation of borrower and lender."

It is our opinion that the expenditure in-
volved in the plan under consideration creates the
customary relationship of borrower and lender and is
therefore a lending of the State's credit within the
meaning of Section 50 of Article III of the Constitu-
tion of Texas.

In construing the provisions of Section 50
and kindred provisions found in Sections 51 and 52 of
Article III of the Constitution, the courts of this
State have held that the Legislature is prohibited
from authorizing the lending of credit or the making
of grants which are not for a public, or governmental,
purpose. Bexar County v. Linden, 110 Tex. 339, 220 S.W.
761 (1920); Road Dist. No. 4, Shelby County v. Allred,
123 Tex. 77, 68 S.W.2d 164 (1934); Seydler v. Border,
115 S.W.2d 702 (Tex.Civ.App. 1938, error ref.). If the
expenditures are for a public purpose, they are not in-
valid because private persons are benefited therefrom.
Alameda County v. Janssen, 16 Cal.2d 276, 106 P.2d 11,
130 A.L.R. 1141 (1940). However, the carrying out of
a governmental function must be the primary object of
the grant of credit. Where the expenditure is direct-
ly in aid of an individual in his private affairs and
results in a benefit to the public only indirectly, it
is not made for a public purpose.

Certainly the preservation and promotion of
the health of the citizens of the State and the educa-
tion of physicians are matters of public concern. But
House Bill No. 431 goes far beyond the providing of in-
struction and training for physicians. We cannot escape

290

Hon. James. B. Pattison, page 4 (V-1163)

the conclusion that the direct benefits of this bill are conferred upon the individuals who are the recipients of the loans, and that the benefits to the public, in the absence of an emergency not here presented, are too indirect to bring it within the orbit of a governmental function.

We have not found any decision in this State in which the question of the constitutionality of loans to individuals for an analogous purpose was presented. In several States, the courts have held statutes authorizing loans to individuals to be unconstitutional, even though the Legislature had enacted the statutes in an effort to promote the general welfare. On the other hand, the courts of some States have taken a broader view of the scope of public purposes and have upheld loans and grants to individuals in various circumstances where the court thought the Legislature was justified in considering the public good benefited thereby. However, we believe that the decisions of the Texas courts in other situations indicate that the meaning of public purpose cannot be broadened to this extent.

This office, in holding that there was no statutory authority for the creation of a student loan fund out of funds appropriated to the Texas State University for Negroes, stated that the presence of such statutory authority would raise serious constitutional questions, in view of Section 50 of Article III of the Constitution. Lee Letter Opinion to W. R. Banks, dated June 3, 1950.

When a proposal for making loans to World War II veterans for purchase of land was before the Legislature it was apparently deemed necessary by the Legislature to amend the State Constitution before such loans could be made. It is our opinion that a similar constitutional amendment would be necessary in order for the "Mississippi Plan" to be valid in this State.

### SUMMARY

The "Mississippi Plan" providing for loans from State funds to students desiring to study medicine cannot be validly adopted

Hon. James B. Pattison, page 5  (V-1163)

by the Legislature in the absence of a
constitutional amendment specifically
authorizing such plan.

APPROVED:

J. C. Davis, Jr.
County Affairs Division

Jesse P. Luton
Reviewing Assistant

Charles D. Mathews
First Assistant

BW:mw

Yours very truly,

PRICE DANIEL
Attorney General

By Burnell Waldrep
       Assistant