

# The Attorney General of Texas

April 8, 1983

**JIM MATTOX**
Attorney General

Supreme Court Building
P. O. Box 12548
Austin, TX. 78711- 2548
512/475-2501
Telex 910/874-1367
Telecopier 512/475-0266

1607 Main St., Suite 1400
Dallas, TX. 75201-4709
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905-2793
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002-6986
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401-3479
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501-1685
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205-2797
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Henry Wade
District Attorney
601 Elm Street
Dallas, Texas    75202

Opinion No. JM-23

Re:   Use  of  repurchase  agree-
ments for short term investment
of county funds

Dear Mr. Wade:

You ask whether Dallas County may utilize "repurchase agreements" for short term investments of idle county funds.  Your letter defines a repurchase agreement as "an agreement for the sale of a specified security to a county for a specified time at a specified rate of interest [with a provision that at] the maturity or due date, the seller automatically repurchases the specified security."

An in-depth explanation of the nature of a repurchase transaction is found in Securities and Exchange Commission v. Miller, 495 F.Supp. 465 (S.D.N.Y. 1980).  Although it is in the form of a sale, a repurchase agreement is essentially a short-term collateralized loan. See Matter of Legel, Braswell Government Securities Corporation, 648 F.2d 321 (5th Cir. 1981).  Cf. First National Bank of Las Vegas, New Mexico v. Estate of Russell, 657 F.2d 668 (5th Cir. 1981).  In essence, the county expects to advance cash to a financial institution that will then be obligated to return the cash to the county, plus an additional amount as interest, at a specified time.  At the time the money is advanced, government securities of a value equal or nearly equal to the amount advanced will be "sold" to the county by the financial institution and later "resold" by the county to the bank in return for repayment of the sum advanced (plus interest).

The law is settled that a county may only do that which the constitution and statutes expressly or impliedly authorize it to do. Canales v. Laughlin, 214 S.W.2d 451, 453 (Tex. 1948); Anderson v. Wood, 152 S.W.2d 1084, 1085 (Tex. 1941).  Thus, the threshold question is whether any statute authorizes Dallas County to utilize the repurchase agreement that you have described.  The only statute found that arguably applies is article 2549, V.T.C.S., subsection (c) of which reads:

> (c)  Unless  expressly  prohibited  by  law  or
> unless it is in contravention of any depository
> contract between a county and any depository bank,

the Commissioners Court may direct the county treasurer to:

(1) withdraw any amount of funds of the county that are deposited in a county depository and that are not required immediately to pay obligations of the county or required to be kept on deposit under the terms of the depository contract; and

(2) invest those funds in direct debt securities of the United States.    (Emphasis added).

Does a "buyer" in a repurchase transaction "invest" funds in securities of the United States?  In Fithel v. Saltes, 11 S.W.2d 815 (Tex. Civ. App. - Galveston 1928, writ ref'd), the "sale" and "repurchase" of a partnership interest was deemed a security arrangement rather than a bona fide transfer of the business.  In Texas, the nature of a transaction is determined by its substance, not its form.  Notwithstanding the terminology used by the parties, we believe the described "repurchase" transaction is a loan of money secured by government securities rather than an investment in such securities.

In view of our conclusion that neither article 2549 nor any other statute authorizes the proposed transaction, we need not determine whether a statute allowing such a transaction would be constitutionally valid.  See Tex. Const., art. III, §52; Brazoria County v. Perry, 537 S.W.2d 89 (Tex. Civ. App. - Houston [1st Dist.] 1976, no writ) (prohibition against lending the credit of the state or any political subdivision thereof).  Cf. Linz v. Eastland County, 39 S.W.2d 599 (Tex. Comm'n App. 1931, holding approved); State ex rel. Graham v. City of Olympia, 80 Wash.2d 672, 497 P.2d 924 (1972); Valley National Bank of Phoenix v. First National Bank of Holbrook, 83 Ariz. 286, 320 P.2d 689 (1958); Bannock County v. Citizens' Bank & Trust Company, 53 Idaho 159, 22 P.2d 674 (1933).

Our attention has been drawn to the recent case of Bache Halsey Stuart Shields, Incorporated v. University of Houston, 638 S.W.2d 920 (Tex. App. - Houston [1st Dist.] 1982, writ ref'd n.r.e.), in which it was held that an obligation undertaken by the university to sell and then repurchase securities under a repurchase agreement did not constitute a prohibited "debt" within the meaning of article III, section 49 of the Texas Constitution.  We do not think the holdings of the court on the questions that were before it control the result here.

A transaction may create a debt in the ordinary sense -- i.e., an obligation to repay -- without creating a "debt" in the constitutional sense because the Texas Constitution classifies as debts only those obligations not expected by the parties to be repaid from current

revenues or from some fund already on hand.  See Charles Scribner's Sons v. Marrs, 262 S.W. 722, 725 (Tex. 1924); McNeill v. City of Waco, 33 S.W. 322 (Tex. 1895).  The University of Houston court concluded that the repurchase transaction at issue there generated funds from which the university expected to discharge its obligation, and observed:

> all that is needed to avoid characterization as a debt [in the constitutional sense] is an expectation that the obligation will or can be paid with current revenues or revenues created by the transaction.

638 S.W.2d, at 925.  The court's determination that such a transaction does not create a debt in the constitutional sense is not inconsistent with the conclusion of other courts that it is a collateralized loan transaction.

The University of Houston opinion focused on the authority of the university to sell, that is borrow against, government securities it already owned.  The court's attention was not directed to situations where a public agency for the first time acquires possession of a security as part of a repurchase agreement.  It said a repurchase agreement "is a reacquisition of an original investment and is, therefore, an investment agreement involving government securities." 638 S.W.2d, at 926.  Furthermore, it described repurchase agreements as an "investment tool. . . consonant with the very general plenary investment powers given the University." (Emphasis added).  Id.  In the context of that case (from the seller's point of view), both statements are accurate.  Since the authority to borrow, however, may exist whether or not there is any authority to invest, the determination of the "power to invest" question was immaterial to the outcome of the case.[1]  The court's discussion of the point is not authoritative precedent.  See Southern Union Life Insurance Company v. White, 188 S.W. 266, 268 (Tex. 1916) (effect of dicta).

In our opinion, the "buyer" in a repurchase transaction invests in the evidence of indebtedness (the repurchase agreement)  and not in

---

1.  Compare V.T.C.S. art. 2549(c) ("in direct debt securities of the United States") with V.T.C.S. art. 6252-5a ("in direct obligations . . . or in certificate of deposit . . . secured by a pledge of securities of the kind heretofore specified").  Taking out loans to obtain cash with which to make investments in government securities is certainly consonant with the possession of investment powers, but such undertakings are not themselves investments.  Borrowing does not constitute "investing."  See Laurie v. Miller, 45 S.W.2d 172 (Tex. Comm'n App. 1932, holding approved).

the securities temporarily surrendered to secure the indebtedness.[2] See Sims v. Russell, 236 Ala. 562, 183 So. 862, 864 (1938) (investment of trust funds in loans secured by bond and mortgage on realty is not an investment in realty). For that reason, we advise that Dallas County may not legally utilize repurchase agreements for short term investments of idle county funds.

### S U M M A R Y

Dallas County may not legally utilize repurchase agreements for short term investments of idle county funds.

Very truly yours,

JIM MATTOX
Attorney General of Texas

TOM GREEN
First Assistant Attorney General

DAVID R. RICHARDS
Executive Assistant Attorney General

Prepared by Bruce Youngblood
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan L. Garrison, Chairman
Jon Bible
Rick Gilpin
Jim Moellinger
Nancy Sutton
Bruce Youngblood

---

2. If the "buyer" disposes of the security in the interim and gambles on replacing it later he has not made an investment in the security disposed of or later acquired. He has merely engaged in speculative trading of "futures." See Hopper v. Tancil, 3 S.W.2d 67, 70 (Tex. Comm'n App. 1928, judgmt adopted) (speculation).