# Thompson v. Thompson.

*Final Settlement of Guardian's Accounts.*

1. *Liability of guardian for interest on money not loaned out nor invested.*—The statutory duty being imposed on a guardian to lend out, if practicable, "all surplus money of the ward on bond and mortgage,

[Thompson v. Thompson.]

or on good personal security" (Code, § 2412), he is liable for interest on moneys not so loaned out nor invested, unless he shows that it was not practicable for him to do so; and though the decision of the question of practicability is necessarily left to his discretion in the first instance, the ultimate decision rests with the court on settlement of his accounts; and the court will neither exercise a severity which might deter prudent men from accepting such trusts, nor sanction a laxity of diligence which might invite men to accept them for gain.

2. *Same; conclusiveness of annual or partial settlements.*—The guardian having made four partial settlements during a period of fifteen years, in each of which he reported money on hand, but was not charged with interest on it, though the ward was represented by a guardian *ad litem*, and the settlements being *prima facie* correct (Code, § 2458), the *onus* is on the ward, on final settlement, to show their incorrectness; but the *onus* is on the guardian to discharge himself from liability for interest, from the last partial settlement to the final settlement.

APPEAL from the Probate Court of Russell.

Heard before the Hon. E. H. GLENN.

On February 9th, 1885, the appellant, George H. Thompson, was appointed the guardian of William N. Richardson, a lunatic, qualified as such guardian, and took possession of the personal property and real estate of his ward. During his guardianship he made several partial settlements thereof, as is stated in the opinion; the last of said settlements being made July 9, 1886. At each of these partial settlements, the probate judge passed and allowed the accounts, debit and credit, filed by the guardian, and in all things confirmed his report. In none of them, however, was the guardian charged with interest for the surplus money in his hands. On December 12, 1889, the said George H. Thompson tendered his resignation as guardian, filed his report and account, and asked for a final settlement of his guardianship. His resignation was accepted, and the appellee, Willis Thompson, was appointed and duly qualified as his successor. Upon the filing of the account of George H. Thompson for the final settlement, one P. A. Green was appointed guardian *ad litem* to represent and protect the interest of said William N. Richardson, and as such guardian *ad litem* contested the settlement of said George H. Thompson's guardianship. Upon the issue thus made evidence was introduced, on the part of George H. Thompson, tending to show that it was not practicable to lend out the money of his ward's estate at 8 per cent. interest, as he would thereby incur great risk, and be in danger of losing the money so loaned out. The testimony for the guardian newly appointed and the guardian *ad litem* was in direct conflict with this, and tended to show that, if the said George H. Thompson had been properly diligent, he could have loaned the surplus money of his ward's

[Thompson v. Thompson.]

estate at 8 per cent. interest, and had it secured in the way provided by the statute. Upon the introduction of all the evidence on both sides of the issue, the probate judge charged the said George H. Thompson with interest at 8 per cent. on the money received from the sale of cotton in February, 1875, from the time of its reception until the first partial settlement; and he also charged him with the same rate of interest on the cash balance ascertained to be in his hands on each settlement, from the time when made to the next succeeding partial settlement. On the examination of the guardian Geo. H. Thompson as a witness, the guardian *ad litem* asked him this question: "Could you not have deposited the money in some bank in Alabama, and obtained legal interest at 8 per cent. at any time during the last fifteen years?" The guardian objected to this question, which objection the court overruled, and the guardian duly excepted to this ruling. He answered, that he did not know. The guardian *ad litem* then asked him: "Is it not easier for a burglary to be committed in your house than on the bank?" The guardian objected to this question, and excepted to the court's overruling his objection. He answered that he supposed it would be easier. The guardian *ad litem* also asked said witness, against the objection and exception of the guardian, "Did you make any effort, at any time during the last fifteen years, to invest the surplus money in real estate?" He answered that he had not.

The guardian George H. Thompson prosecutes this appeal; and assigns as error the rulings of the Probate Court on the evidence, and the final judgment.

LYMAN W. MARTIN, for appellant.

NORMAN & SON, *contra.*

CLOPTON, J.—The single question presented by the record is, should appellant be charged, on his final settlement as guardian of William N. Richardson, a person of unsound mind, with interest on the moneys of his ward, which were not invested or loaned out? The statute defines and fixes the duty of the guardian as to the management and improvement of his ward's estate, and as to making the surplus money productive. Section 2412 of the Code declares: "It is the duty of the guardian to manage the estate of his ward frugally, and to improve it to the best of his skill and ability. He must, if practicable, lend out all surplus money of the ward on bond and mortgage, or on good personal security, and, if the bond is not renewed annually, require the interest to be paid at the

[Thompson v. Thompson.]

end of each year." The statute is declaratory of the ordinary duty, independent of statute, of a guardian to make his ward's funds productive by investing the surplus moneys so that they draw interest.—*Allen v. Martin*, 36 Ala. 330. The statute restricts the discretion of the guardian as to the class or kind of securities which may be taken, but does not constitute him the exclusive and final judge of the practicability of investing in such securities, or of their sufficiency. If he suffers his ward's funds to remain unemployed, when, by the exercise of reasonable diligence, they could have been safely invested in the kind of securities authorized by the statute, he is responsible for, at least, simple interest.—*Bryant v. Craig*, 12 Ala. 354; *Owens v. Peebles*, 42 Ala. 338. On the other hand, if it was not practicable to make such investments by the exercise of reasonable diligence, the guardian is not liable for, and should not be charged with any interest.—*Brand v. Abbott*, 42 Ala. 499. In determining the practicability of safely loaning the money of the ward, the guardian acts under the obligation of his trust, and the responsibility assumed by the acceptance of his appointment. As it is his manifest duty to make such investments when practicable, it is incumbent on him to show that he could not, using due diligence, safely lend the money on bond and mortgage, or on good personal security; but whether or not practicable is a question, ultimately, for the decision of the court on the evidence adduced. If the expressions in the opinion in the case of *Ashley v. Martin*, 50 Ala. 537, were intended to declare that the practicability of safely loaning the money of the ward rested on the sole judgment of the guardian, they must be modified, in conformity with these views.

It may be difficult to lay down fixed rules, by which to adjudge in each case the liability of the guardian for interest. It may, however, be stated as a general principle, that he is chargeable with interest, whenever it appears that he has been guilty of neglect in failing to put out his ward's money at interest—has not exercised the prudence and diligence which a discreet man would have exercised in respect to the management of his own surplus money under like circumstances.—*McLean v. Hosea*, 14 Ala. 194. The applicability of this principle is necessarily dependent upon the particular circumstances of each case. It has been correctly said : "A jealous severity which would deter prudent men from accepting these trusts, and a lax indulgence which would invite men to accept them for gain, are extremes which are equally inexpedient."—*Clarkson v. DePeyster*, Hopk. Ch. 424.

Appellant was appointed guardian Feb'y 9, 1875. He made

[Thompson v. Thompson.]

four partial settlements at the following dates : February 28, 1876 ; September 8, 1879 ; February 25, 1884 ; and July 9, 1886. The probate judge charged him with interest on the money received from the sale of cotton in February, 1875, from the time of its reception to the first partial settlement; and on the cash balance ascertained to be in his hands on each settlement, from the time when made to the next succeeding partial settlement. Due and legal notice of each settlement was given, and the ward represented by a guardian *ad litem*, who appeared and contested the account filed by the guardian. Each settlement appears to have been regular in all respects. The statute declares : "Upon the final settlement, a partial settlement must be taken and presumed as correct; but, any item of the account may be re-examined, and if on re-examination it is found incorrect, the item must be disallowed, or allowed only so far as its correctness may appear."—Code, § 2458. The partial settlements, having been regularly made, were *prima facie* evidence that the guardian had satisfactorily accounted for the failure to loan his ward's money. On the final settlement, the burden rested on the guardian *ad litem*, representing the ward, to show its incorrectness. On neither of the partial settlements was the guardian charged with interest, which was tantamount to a judicial determination that it was not practicable to lend the surplus money on bond and mortgage, or on good personal security.—*Ashley v. Martin*, *supra*. Whatever might have been the effect of the evidence, had the burden of proof remained on the guardian, careful consideration shows its insufficiency to rebut or overcome the *prima facie* case made by the partial settlements. Especially does this insufficiency become apparent, when considered in connection with the statutory requirement that the guardian must, "if the bond is not renewed annually, require the interest to be paid at the end of each year"; and the provision making all contracts with the guardians for the payment of money bear compound interest after maturity.—Code, §§ 2412, 2413. On the evidence shown by the record, the court erred in charging the guardian with interest on the surplus moneys in his hands prior to the last partial settlement.

However, the *onus* was on the guardian to show that it was not practicable to invest the surplus money of his ward, ascertained to be in his hands on the last partial settlement, July 9, 1886, in the securities authorized by the statute, after the making of that settlement. The record shows, that in the general management of the estate the guardian has acted with good faith, and has managed it frugally, accumulatnig a considerable cash fund from the income and rents of the plan-

[Thompson v. Thompson.]

tation of the ward, after defraying all necessary expenses. Had it been shown that he made reasonable effort to invest the surplus money, his management of the estate would have induced us to consider favorably the exercise of his judgment, that the money of his ward could not have been safely loaned on bond and mortgage, or good personal security; but, on the evidence disclosed by the record, especially in view of the fact that he made no effort to do so, did not even make known that he had money to lend, we are forced to hold that he is chargeable with interest on the cash balance ascertained to be in his hands on the last partial settlement. It appears that the ward is in the Insane Asylum, and that it was necessary for the guardian to keep on hand a sum of money sufficient to meet the current and contingent expenses. In estimating the amount on which the guardian should be charged interest, the judge of probate should deduct from such cash balance a reasonable amount for this purpose, and, also, allow the guardian a reasonable time in which to make the investment.—*Knowlton v. Bradley*, 17 N. H. 458; *Baker v. Richards*, 8 Serg. & R. 12. The guardian should be charged with interest, only on the balance after making such deduction, and only from the expiration of such reasonable time, to December 12, 1889, when he resigned and his letters were revoked; for, from and after such time he was bound to keep the money so as to be able to turn it over to his successor.

The evidence as to the comparative security of keeping the money in his own house and depositing it in a bank, was irrelevant and immaterial. He kept it safely, and there is no effort to charge him with neglect in the manner of keeping the money. The same observation applies to the evidence in relation to the practicability of investing the money in real estate; for, while the statute authorizes a guardian to invest the money of his ward in real estate, situated in any part of the State, and exempts him from responsibility, if he acts in good faith, for depreciation in the value of the land purchased, it makes him liable for any loss sustained by a failure or defect of title— a warrantor of the title.—Code, §§ 2441, 2443. The law does not exact of the guardian such duty, nor require him to assume such liability.

Reversed and remanded.