183 So. 862

**SIMS et al. v. RUSSELL.**

8 Div. 869.

Supreme Court of Alabama.

Oct. 13, 1938.

S. A. Lynne, of Decatur, for appellants.

Chas. H. Eyster and W. F. Boswell, Jr., both of Decatur, for appellee.

BOULDIN, Justice.

The sole question for decision is whether the guardian of the estate of minors should have been charged on final settlement with the loss of the funds of the wards through a loan made by the guardian, which became, in large part, uncollectable.

The loan of $1,000 was made in 1926, secured by the note of the borrower, with a pledge of stock in a National Bank of the face value of $1,000 as collateral security. The note was due one year after date. Interest payments were made regularly until 1930; irregularly until October, 1931, when the debtor became a bankrupt.

The claim was never proven against the bankrupt estate. The stock was released to the guardian. No payments were made on principal or interest after October, 1931. The stock was sold in 1936 for $305. The trial court declined to charge the guardian with the loss.

Appellants insist, first, that the loan was unlawful from the beginning in that it was an investment in the stock of a private corporation in violation of Section 74, Constitution of 1901. This section reads: "No act of the legislature shall authorize the investment of any trust fund by executors, administrators, guardians, or other trustees in the bonds or stock of any private corporation; and any such acts now existing are avoided, saving investments heretofore made."

The section is directly aimed at legislative acts, corporate charters and the like, declaring their bonds and stocks available for legitimate investment of trust funds in the hands of guardians, etc.

The section is expressive of a public policy excluding such securities from the field of lawful investments for trust funds, a policy generally obtaining in the absence of statute. Randolph v. East Birmingham Land Co., 104 Ala. 355, 16 So. 126, 53 Am.St.Rep. 64.

This section of the Constitution was again considered quite fully, both as to its origin and purpose, in White v. White, 230 Ala. 641, 162 So. 368.

Both these cases dealt with investments of trust funds in the form of purchases of stocks or bonds in private corporations.

Is a bona fide loan upon the personal note of a borrower deemed solvent at the time, but secured solely by the pledge of corporate stock as collateral security, an "investment" in such stock within the meaning of Section 74 of the Constitution? Without question loans of this class, putting out money for the purposes of deriving an income, is an investment, as the term is often used. 33 C.J. 808. This does not necessarily mean that the loan is an investment in the collateral securities behind the loan within the spirit and purpose of Section 74. This section first appeared in the Constitution of 1875.

The duty of a guardian in the management of the wards' estate was at that time defined by statute coming down without

change from the Code of 1852, now Section 8149, Code of 1923, which reads: "It is the duty of the guardian to manage the estate of his ward frugally, and to improve it to the best of his skill and ability. He must, if practicable, lend out all surplus money of the ward on bond and mortgage, or on good personal security, and, if the bond is not renewed annually, require the interest to be paid at the end of each year."

In Milhous v. Dunham, 78 Ala. 48, 55, this court, dealing with a will directing trust funds to be invested in loans "secured by good bond and mortgage" it was declared such loans secured by mortgage on real estate were not investment in real estate. This rule is now well settled. Hall v. Esslinger, 235 Ala. 451, 179 So. 639.

By Section 8168 of the Code, a companion statute to be construed in pari materia with Section 8149, supra, a guardian is empowered to "invest" the wards' money in real estate, meaning the purchase of real estate, the guardian becoming an insurer of the title. Code, § 8170. Thompson v. Thompson, 92 Ala. 545, 9 So. 465.

It thus appears that an investment in lands was at the time of adoption of Section 74 of the Constitution a thing apart from the loan of money secured by mortgage on real estate.

While it may well be argued that the hazard of lending trust funds on the sole security of corporate stocks is much the same as the purchase of such stocks with trust funds, there are distinct differences.

The lender may readily require a margin of safety against fluctuations, provide for a call for further collateral in case the security is about to become inadequate, and even for closing out the loan when the value of security is depreciating to the point of hazard of loss.

Other analogies may be found in the law. For example, in the absence of statute, it has been generally held that a commercial bank cannot lawfully invest in the stock of a business corporation, by subscription or purchase, thus becoming a stockholder and subjecting the bank to the hazard of other business enterprises. 7 C.J. 590, § 227, Note 47.

But it is frequently held that such stock may be taken as collateral for a loan, and especially may be taken as security for or in payment of an existing indebtedness to save the bank from loss. 7 C.J. 591, § 229, Note 60 and 61.

It will be noted that Section 74 of the Constitution forbids investment in corporate bonds or preferred stock, the same as common stock. It not only covers funds held by guardians, but trust funds generally.

At the same time it is the policy of our law, declared by statute, that monies of the ward shall be made to yield an income, if practical, and the guardian is expressly empowered to take good personal security, as well as real estate security.

Constitutional limitations on Legislative powers, such as Section 74, running into the indefinite future, are to be strictly construed.

We conclude, therefore, that it is not the purpose of Section 74 to exclude, as a basis of credit and security for loans, the whole body of corporate securities, which, in our day, are recognized as sound security for loans by prudent investors throughout the business world.

This brings us to the second inquiry, namely, was this loan frugally made and subsequently managed in keeping with the duties of a guardian so as to relieve him of responsibility for the loss of the wards' money? On this point the evidence consists almost wholly of the frank statements of the guardian himself.

When the loan was made in 1926 the bank stock had a market value of $135 per share. It so continued until 1929. While the market value in 1930 and down to October, 1931, when the debtor went into bankruptcy was not so steady, it is admitted that depreciation in value began in the spring of 1931. Meantime, the debtor had defaulted on the interest instalment due November, 1930, also the annual interest due in May, 1931. On either of these dates, the money could have been realized on this bank stock. The note was long past due, and collection of principal and interest was enforcible at any time. No action was taken save to collect further interest about the time the debtor went into bankruptcy. From that time on the stock was the sole security for the debt. While it appears the market for bank stock was bad in October, 1931, it does not appear the money could not have been realized in whole or the larger part, at that time.

The guardian was president of the bank during the whole time; in position to know when depreciation began to endanger the loan.

Clearly the duty of a guardian to exercise care and prudence in seeing that the loan is either paid or remains well .secured is the same as the duty in making the loan in the first instance.

When a guardian seeks to excuse himself for loss of his wards' money on a loan made by him the burden is on him to show such loss is due to no fault, want of reasonable vigilance and foresight, on his part.

Without prolonging the discussion, we are of opinion that under well recognized rules of law touching the duty of guardians and other trustees, the loss of this fund should be visited 'on the guardian, not the wards, whose estate was in his keeping.

The decree of the court below is reversed, and the cause remanded for further proceedings in keeping with this opinion.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.