The Alabama Department of Revenue ("the Department") appeals from a judgment in favor of Sonat, Inc. We affirm.
Sonat, Inc., a Delaware corporation that does business in Alabama, appealed to the circuit court from the Department's denial of Sonat's claims for refunds of foreign corporation franchise tax paid for tax years 1991, 1992, and 1993, and from the entry of a final assessment of additional franchise tax due. Sonat paid the disputed franchise tax and timely filed its notice of appeal and complaint, thereby complying with the provisions of § 40-2A-7, Ala. Code 1975. At issue in this appeal is the interpretation of § 40-14-41(d)(1), Ala. Code 1975 ("the (d)(1) exclusion").
A foreign corporation's Alabama franchise tax is based upon the "actual amount of its capital employed in this state." § 40-14-41(a), Ala. Code 1975. The (d)(1) exclusion provides:
 "There shall be excluded from the amount of capital as determined in subsection (b) of this section the investment by the taxpayer in the capital of other corporations organized under the laws of Alabama, or under the laws of any other state if such other corporations also pay a franchise tax to the State of Alabama, unless the taxpayer is a dealer in stocks or securities. . . ."
"Capital" is defined in § 40-14-41(b) as follows:
"(1) The outstanding capital stock;
"(2) Surplus and undivided profits . . .;
 "(3) The amount of bonds, notes, debentures, or other evidence of indebtedness maturing and payable more than one year after the first day of the franchise tax year; [and]
 "(4) The amount of the bonds, notes, debentures, or other evidences of indebtedness maturing and payable at the time to . . . another corporation owning more than 50 percent of the capital stock of such corporation . . . and which other corporation . . . is not also required to pay a franchise tax to the State of Alabama. . . ."
Sonat sought to exclude from its capital base long-term debt (§ 40-14-41(b)(3)) owed to it by two of its wholly owned subsidiary corporations, Sonat Exploration Company ("SEC") and Sonat Offshore Drilling, Inc. ("SODI"), both of which also pay Alabama franchise tax. Sonat contends that, according to the definition of "capital" in § 40-14-41(b), long-term debt is an investment in the "capital" of SEC and SODI and qualifies for the (d)(1) exclusion. The Department contends that only an investment in the "capital stock" of another corporation qualifies for the (d)(1) exclusion. The Department also contends that two of Sonat's subsidiaries, SODI and Citrus Corporation ("Citrus"), in which Sonat owned a 50% interest, were not doing business in Alabama during the tax years at issue, and, therefore, that Sonat's investment in their capital stock would not qualify for a(d)(1) exclusion.
Sonat is a holding company that acts by and through subsidiary corporations. It is engaged in the production, storage, transmission, and marketing of natural gas and oil field services. SEC, SODI, and Citrus are all Delaware corporations that are qualified to do business in Alabama. It is undisputed that SEC did business in Alabama during the tax years at issue. Citrus, owned 50% by Sonat and 50% by Enron Corporation, qualified to do business in Alabama in 1987. The trial court found that Citrus's board of directors, the membership of which is equally divided between Sonat employees residing in Alabama and Enron employees residing in Texas, met in Alabama on numerous occasions *Page 414 
to conduct corporate business and to make management decisions regarding a subsidiary corporation, and that Citrus conducted several corporate training sessions at Sonat's training facility in Tuscaloosa. SODI qualified to do business in Alabama in 1978. The trial court found that SODI's board of directors, some of whom are Sonat employees residing in Alabama, met in Alabama on numerous occasions to conduct corporate business and to make management decisions regarding its business, and that SODI conducted several corporate training and planning sessions at Sonat's training facility in Tuscaloosa. Since 1981, SODI has owned tangible personal property located in Alabama from which it receives rental income. Both Citrus and SODI filed foreign corporation franchise tax returns and corporate income tax returns with the Department for tax years 1989-93, and paid all applicable taxes due.
Sonat timely filed Alabama foreign corporation franchise tax returns with the Department for tax years 1989 through 1993[1] and paid the franchise taxes due for those years as follows: tax year 1989, $715,759; tax year 1990, $894,256; tax year 1991, $1,094,800; tax year 1992, $1,009,598; and tax year 1993, $854,228. Sonat did not claim a(d)(1) exclusion on those returns for the amount of the long-term debt owed to it by SEC and SODI. The record reflects that the persons responsible for preparing Sonat's returns erroneously believed the debt to be short-term (§ 40-14-41(b)(4)). Sonat did claim a(d)(1) exclusion on those returns for the amount it had invested in the capital stock of Citrus and SODI.
After filing the 1989-93 franchise tax returns, the persons responsible for preparing Sonat's returns learned that the debt owed to Sonat by SEC and SODI was long-term debt that had been included for franchise tax purposes in the capital base of SEC and SODI pursuant to § 40-14-41(b)(3). Sonat then prepared amended franchise tax returns excluding from its capital base the amount of the long-term debt owed to it by SEC and SODI, pursuant to its interpretation of § 40-14-41(d)(1). In October 1993, Sonat filed with the Department petitions seeking refunds of franchise tax paid for tax years 1989 through 1993 as follows: tax year 1989, $409,156; tax year 1990, $748,802; tax year 1991, $1,094,775; tax year 1992, $1,009,573; tax year 1993, $854,203.
In November 1993, the Department asserted that, rather than being entitled to the refunds requested, Sonat owed additional foreign corporation franchise tax of $3,223,889.30. Among other adjustments, the Department disallowed Sonat's exclusion of the amount of the long-term debt owed to it by SEC and SODI from its capital base. After a meeting between representatives of Sonat and the Department, the Department further disallowed Sonat's exclusion of its investment in the capital stock of Citrus from its capital base.
In March 1994, the Department issued a notice of preliminary assessment, asserting that Sonat owed additional foreign corporation franchise tax of $4,485,901.18, a penalty of $1,000,419.36, and interest of $1,042,382.33 computed to April 18, 1994, for a total of $6,528,702.87. After another meeting between representatives of Sonat and the Department, the Department revised the preliminary assessment to assert that Sonat owed additional foreign corporation franchise tax of $4,108,932.86, with interest of $1,097,002.34 computed to August 16, 1994, for a total due of $5,205,935.20, and eliminated the penalty initially imposed. The revised preliminary assessment corrected in Sonat's favor certain adjustments previously made by the Department, but it also disallowed Sonat's exclusion of its investment in the capital stock of SODI from its capital base.
On November 4, 1994, the Department issued a final assessment, asserting that Sonat owed additional foreign corporation franchise tax of $4,108,932.86, with interest of $1,170,625.42 computed to November 4, 1994, for a total of $5,279,558.28. On December 1, *Page 415 
1994, Sonat paid the amount due in the final assessment, plus interest computed to December 1, 1994, for a total of $5,314,707.12. On December 2, 1994, Sonat timely filed its notice of appeal with the circuit clerk and with the secretary of the Department.
Alabama's foreign corporation franchise tax statute was initially enacted in 1915 and was reenacted in 1935. It imposed a franchise tax on foreign corporations based on the actual amount of capital employed in the state, but neither enactment defined "capital" or provided how the capital employed was to be determined. The statute was amended in 1961 to address those omissions and to provide for various exclusions and deductions from the capital base. The (d)(1) exclusion read as follows in 1961:
 "D. Exclusions and Deductions. (1) There shall be excluded from the amount of capital as determined in Subsection B the amount invested by the taxpayer in the capital stock of other corporations organized under the laws of Alabama, or under the laws of any other State if such other corporations also pay a franchise tax to the State of Alabama, unless the taxpayer is a dealer in stocks or securities. . . ."
(Emphasis added.) The (d)(1) exclusion was amended in 1973 to read as follows:
 "D. Exclusions and deductions. (1) There shall be excluded from the amount of capital as determined in subsection B the investment by the taxpayer in the capital of other corporations organized under the laws of Alabama, or under the laws of any other state if such other corporations also pay a franchise tax to the state of Alabama, unless the taxpayer is a dealer in stocks or securities. . . ."
(Emphasis added.) The legislators sponsoring the 1973 amendment included the following synopsis explaining the bill's purpose:
 "This Act amends subsection D(1) of section 348 of Title 51 [Ala. Code of 1940 (Recomp. 1958)] by substituting the word 'investment' for the words 'amount invested' and by deleting the word 'stock'. These technical changes merely eliminate any possibility of double taxation by removing any ambiguity that may exist in the present statute."
A fiscal note provided by the House Ways and Means Committee stated: "This bill does not affect state revenue." The trial court noted that no evidence was introduced explaining the source of this fiscal note or the assumptions upon which it was based. Neither the synopsis nor the fiscal note is a part of the amendment that is now codified as § 40-14-41(d)(1), Ala. Code 1975.
After Sonat filed its petitions for refund, the Department promulgated Regulation 810-2-3-.14 ("Exclusion of Investments In Other Corporations Doing Business In Alabama"), which became effective December 19, 1994. The Department previously had not officially interpreted the (d)(1) exclusion, although it maintained in its explanation of the rationale for adoption of the regulation that it clarified the Department's "long standing policy and interpretation." Regulation810-2-3-.14(2)(c) defines "Investment in the Capital of Other Corporations" as "[a] direct investment in the capital stock of another corporation included in the taxpayer's balance sheet." Thus, notwithstanding the 1973 amendment to the (d)(1) exclusion, the Department takes the position that the exclusion still is limited to a foreign corporation's investment in the capital stock of other corporations.
The trial court entered a comprehensive and well-reasoned judgment. Regarding the Department's contention that the (d)(1) exclusion allows a foreign corporation to exclude from its capital base only its investment in another corporation's "capital stock," the trial court stated as follows:
 "The constitutional and statutory history surrounding the (d)(1) exclusion conclusively establishes that the intent of the Alabama Legislature was to permit a foreign corporation to exclude its investment in the 'capital' of other corporations paying Alabama franchise tax. . . .
 ". . . [S]ince the adoption of the 1901 Constitution, the terms 'capital' and 'capital stock' have been utilized in the franchise tax context to reflect different measures of taxation, a distinction that has been recognized by the Alabama Supreme Court since at least 1926: *Page 416 
 " 'We are, of course, aware of the fact that in some instances "capital" and "capital stock" are used interchangeably, but such cannot be the case here, as section 229 of the Constitution, in dealing with domestic corporations, expressly bases the franchise tax on the "capital stock," while section 232 bases the franchise tax on foreign corporations on the "actual amount of capital employed in this state." '
 "Ellis v. W.A. Handley Mfg. Co., 214 Ala. 539, 540, 108 So. 343, 344 (1926), quoted with approval in Alabama Textile Prods. Corp. v. State, 263 Ala. 533, 541, 83 So.2d 42, 48 (1955). For Alabama franchise tax purposes there can be no question but that 'capital' and 'capital stock' are separate and distinct terms having separate and distinct meanings.
 ". . . The foreign corporation franchise tax, both as initially enacted in 1915 and as reenacted in the 1935 Act, imposed a franchise tax on foreign corporations based on the 'actual amount of capital employed in this state.' However, the statute neither defined capital nor provided how the capital employed in Alabama was to be determined. This cryptic statutory provision resulted in many court cases attempting to interpret and apply the tax base to many varied situations. In an effort to eliminate this confusion and litigation, the foreign corporation franchise tax law was amended by the 1961 Act . . . to define the term 'capital' and to provide for the allocation of the appropriate amount of capital to Alabama. With but little change, the definition of 'capital' contained in the 1961 Act is the same as the definition of 'capital' contained in § 40-14-41(b) during the tax years here at issue. The 1961 Act also provided for various exclusions and deductions from a foreign corporation's capital.
 "One such exclusion was provided for 'the amount invested by the taxpayer in the capital stock of other corporations. . . .' (emphasis added). Thus, as initially enacted, the (d)(1) exclusion was statutorily limited to a foreign corporation's investment in the 'capital stock' of other corporations.
 "However, the (d)(1) exclusion was later amended by the 1973 Act to permit taxpayers to exclude 'the investment by the taxpayer in the capital of other corporations. . . .' Thereafter, the (d)(1) exclusion from capital included a foreign corporation's investment in the entire capital of other corporations, not just its investment in the capital stock of other corporations.
 "The Department's argument that the legislature did not intend for the (d)(1) exclusion to include a foreign corporation's investment in 'capital,' as opposed to 'capital stock,' is unfounded. . . . The fact that the legislature enacts an amendment to a statute creates a presumption that it is changing the original act. Sutherland Stat. Constr.
§ 22.30 (5th ed. 1993). The legislature is not presumed to act without effect. It has long been the rule in Alabama that one 'cannot assume that the legislature intended to do a meaningless or futile thing.' Lepeska Leasing Corp. v. State, 395 So.2d 82, 85 (Ala.Civ.App. 1980), cert. denied, 395 So.2d 85 (Ala. 1981); Druid City Hosp. Bd. v. Epperson, 378 So.2d 696, 699 (Ala. 1979). Thus, the conclusion is inescapable, by enacting the 1973 Amendment the legislature did in fact amend the (d)(1) exclusion.
 "Having determined that the (d)(1) exclusion includes a foreign corporation's investment in the capital, not capital stock, of Alabama corporations and other foreign corporations also paying Alabama franchise tax, the meaning and scope of the term capital as used in the foreign corporation franchise tax statute must be determined. The following rules of statutory construction detail the path taken by the Court in making that determination. The Alabama Supreme Court has clearly stated that '[t]he fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute.' IMED Corp. v. Systems Eng'g Assocs. Corp., 602 So.2d 344, 346 (Ala. 1992). . . . And, '[w]hen possible, the intent of the legislature "must be gathered from the language of the statute itself. . . ." ' Hurley v. Marshall County Comm'n, 614 So.2d 427, 431 (Ala. 1993), quoting Advertiser Co. v. Hobbie, *Page 417 474 So.2d 93, 95 (Ala. 1985). It is further said that '[w]ords in a statute should be given their plain, ordinary, and commonly understood meaning, unless there is a specific statutory definition.' McGuire Oil Co. [v. Mapco, Inc.], 612 So.2d [417] at 422 [(Ala. 1992)] (emphasis in original). . . . Finally, '[i]f the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect.' IMED Corp., 602 So.2d at 346.
 "Thus, the Court looked first to the statute itself to determine the meaning and scope of the (d)(1) exclusion . . . that effectuates the legislature's intent. . . . The statutory definition of capital contained in § 40-14-41(b) and applicable for foreign corporation franchise tax purposes (i) clearly states that capital stock is merely a component of capital, not the equivalent of capital, and (ii) clearly provides that capital includes all long-term debt . . . of the foreign corporation to whomever owed.
 "The Alabama Legislature defined capital within the very section that both imposes the foreign corporation franchise tax and establishes the exclusion for a taxpayer's investment in the capital of other corporations. Therefore, this statutory definition necessarily governs. See McGuire Oil Co., 612 So.2d at 422; [State v.] Georgia-Florida-Alabama Equip. Co., 425 So.2d [472] at 475 [(Ala.Civ.App. 1982)]. Indeed, there is no method by which the legislature can more clearly express its intentions as to the meaning of a term than to include a definition thereof in the very section in which the term is utilized. In fact, the interrelationship between the subsection (b) definition of capital and the subsection (d)(1) use of the term is further manifested by the fact that subsection (d)(1) references the subsection (b) definition:
 " 'There shall be excluded from the amount of capital as determined in subsection (b) of this section the investment by the taxpayer in the capital of other corporations. . . .' (emphasis added).
 " 'Capital' simply cannot have two different meanings within subsection (d)(1). The Alabama Supreme Court has mandated that '[a] phrase that is used repeatedly in statutory provisions relating to the same object or subject matter shall "be interpreted to have the same meaning" throughout.' House v. Cullman County, 593 So.2d 69, 72 (Ala. 1992), quoting 73 Am.Jur.2d Statutes §§ 232-33, at 415-16 (1974). Here, capital is used repeatedly in the same statute. Therefore, according to the Alabama Supreme Court, capital 'shall be interpreted to have the same meaning throughout.'
 "Since capital has been specifically defined in the same Code section in a clear and unambiguous manner, there is no occasion to engage in further judicial construction of the term, and effect must be given to the expressed intent of the legislature as evidenced by the statutory definition. Applying the statutory definition of capital contained in § 40-14-41(b), the Court finds that long-term debt must be included within the meaning of capital. See
§ 40-14-41(b)(3).
 "If capital, as used in the (d)(1) exclusion, were interpreted to mean capital stock, double taxation would be unavoidable. . . .
 "However, the Department would deny the parent corporation the (d)(1) exclusion on the ground that the exclusion applies only to the parent corporation's 'direct investment in the capital stock' of the subsidiary corporation, not to its investment in the 'capital' of the subsidiary corporation. The result — double taxation. . . .
". . . .
 "This result runs headlong into the longstanding rule of the Alabama Supreme Court that a statute is to be interpreted, if possible, so as to avoid double taxation. In Paramount-Richards Theatres, Inc. v. State, 256 Ala. 515, 55 So.2d 812 (1951), the court stated the rule as follows:
 " 'Double taxation is permissible, it is true, but is, as a matter of policy, to be avoided whenever possible. . . . The presumption is against the intention of the legislature to impose double taxation on the same property. 61 C.J. sec. 71, — and prevails unless overcome by *Page 418 
the express words of the statute. Any construction of a taxing statute which results in the taxation of the same property twice is to be avoided if possible and never to be adopted unless necessary to affect [sic] the manifest purpose of the legislature.'
 "Id. at 529, 55 So.2d at 824 (emphasis added). The Alabama Legislature certainly has expressed no intention to subject the same capital to the Alabama franchise tax twice. In fact, in 1973 the legislature specifically acted to eliminate the risk of double taxation. The Department is not at liberty to interpret § 40-14-41(d)(1) so as to read capital out of the statute, and to read capital stock back into said statute.
 "In support of its position, the Department argues that the legislature's use of the term 'investment' supports the Department's attempt to restrict a foreign corporation's (d)(1) exclusion to its 'direct investment in the capital stock' of another corporation. The Department argues that by use of the term investment in the (d)(1) exclusion, the legislature intended to limit the (d)(1) exclusion to only the equity component of capital and not the debt component of capital.
 "Unlike capital, the term investment has been defined neither in the Alabama tax code nor by the Alabama courts. Therefore, the 'plain, ordinary, and commonly understood' meaning of the term must be ascertained in order to determine its scope and meaning as used in the referenced statute. McGuire Oil Co., 612 So.2d at 422; Georgia-Florida-Alabama Equip. Co., 425 So.2d at 475. Black's Law Dictionary, as in print at the time the 1973 Act was enacted, defined 'invest' and 'investment' as follows:
 " 'Invest. To loan money upon securities of a more or less permanent nature, or to place it in business ventures or real estate, or otherwise lay it out, so that it may produce a revenue or income.' (emphasis added)
 " 'Investment. The placing of capital or laying out of money in a way intended to secure income or profit from its employment.'
 "BLACK'S LAW DICTIONARY 960 (4th ed. rev. 1968). Thus, 'investment,' as does 'invest,' necessarily includes the loan of money on a long-term basis.
 "Although neither the legislature nor the courts have defined 'investment,' both have addressed the scope of the term. In Sims v. Russell, 236 Ala. 562, 183 So. 862 (1938), the Alabama Supreme Court, in the context of deciding whether a loan secured solely by corporate stock constituted an 'illegal investment' by a guardian for his ward, stated that '[w]ithout question loans of this class, putting out money for the purposes of deriving an income, is an investment, as the term is often used.' Id. at 563, 183 So. at 864 (emphasis added). In addition, the Alabama Legislature uniformly has included various forms of indebtedness on certain 'legal lists' of investments. [See, e.g.,] Ala. Code § 2-6-36 . . .; Ala. Code § 19-3-120 . . .; Ala. Code § 41-10-451(4). . . .
 "The above-cited authorities are entirely consistent with [Sonat's expert witness's] uncontroverted testimony that corporations regularly 'invest' in both the equity capital and the debt capital of their subsidiary corporations. Therefore, the Court finds that the acquisition of debt instruments is included within the scope of the term investment. Thus, long-term debt owed to a foreign corporation by an Alabama corporation or another foreign corporation also paying franchise tax to the State of Alabama qualifies for exclusion under § 40-14-41(d)(1) as an 'investment' in the 'capital' of such other corporation.
 "While it is true that tax exemptions are to be strictly construed, the Alabama Supreme Court has long held that such rule 'does not call for a strained construction adverse to the real intention of the Legislature.' State v. Dawson, 264 Ala. 647, 650, 89 So.2d 103, 105 (1956). . . . Thus, § 40-14-41(d)(1) may not be so strictly construed as to negate the clearly stated legislative intent.
 ". . . The (d)(1) exclusion . . . is not a tax exemption, but is part of a 'reasonable method of ascertaining the amount of capital employed for the purpose of fixing the *Page 419 
franchise tax.' [Penn Mut. Life Ins. Co. v. State, 223 Ala. 332, 334, 135 So. 346, 347 (1931).] So characterized, if there were any ambiguity in the meaning of 'investment' or 'capital' within the context of § 40-14-41(d)(1), any doubt must be resolved in favor of the taxpayer, not the Department. See Norandal USA, Inc. v. State Dep't of Revenue, 545 So.2d 792, 793 (Ala.Civ.App. 1989) (when franchise tax statute reasonably capable of two constructions, construction most favorable to taxpayer must be adopted). . . .
". . . .
 "The Court acknowledges that administrative interpretations of statutes are entitled to consideration; however, that is the case only when the interpretation is consistent with the language and legislative intent of the statute. The Alabama Supreme Court has clearly stated that the 'rule of construction is to be laid aside where it seems reasonably certain that the administrator's interpretation has been erroneous and that a different construction is required by the language of the statute.' Boswell v. Abex Corp., 294 Ala. 334, 336, 317 So.2d 317, 318 (1975). It has long been the law in Alabama that the legislature, and not the Department, enacts or amends Alabama's tax laws.
 " 'We recognize the authority of the Commissioner to make reasonable rules and regulations as the statute prescribes. But that power is administrative in character, and legislation may not be enacted under the guise of the exercise by issuing a regulation which is out of harmony with, or alters, extends or limits the statute being administered.'
 "Hamm v. State ex rel. Martin, 250. Ala. 81, 83, 33 So.2d 358, 359 (1948). The Department's franchise tax regulations stand on no different ground. As stated by the Alabama Court of Civil Appeals in West Point Pepperell, Inc. [v. State Dep't of Revenue], 624 So.2d [579] at 581 [(Ala.Civ.App. 1992), cert. quashed as improvidently granted, 624 So.2d 582 (Ala. 1993)]:
 " 'Additionally, it is well settled that the provisions of a statute will prevail in any case of conflict between the statute and an agency regulation. Ex parte State Dep't of Human Resources, 548 So.2d 176 (Ala. 1988).'
 "The Department's attempt to limit the (d)(1) exclusion to a taxpayer's 'direct investment in the capital stock of another corporation' [Regulation 810-2-3-.14(2)(c)] is in direct contravention of the mandate of the Alabama Legislature. The statute clearly provides an exclusion from capital for a taxpayer's 'investment in the capital' of other corporations.
 "The Department cannot usurp the power of the legislature and limit the (d)(1) exclusion. The legislature amended the foreign corporation franchise tax in 1973 to provide an exclusion for the investment by a taxpayer in the capital of other corporations. The Department's construction of the franchise tax is clearly erroneous and is hereby set aside.
 In its post-trial brief, the Department proffered several arguments which were not presented at the trial of this tax appeal and in support of which there is no evidence in the record. One such argument was that if the Court applied the clear language of the (d)(1) exclusion, 'investment in the capital' of other corporations, such a ruling 'would have an economic impact of such significance that the instant case would appear minuscule.' As stated, there is absolutely no evidence in the record to support this contention by the Department. However, even if there were such evidence, the economic consequence of interpreting and applying the (d)(1) exclusion as written and to avoid double taxation, is not relevant. It is for the Alabama Legislature to determine if the avoidance of double taxation is now too costly, not for this Court and certainly not for the Department."
(Footnotes omitted.)
Because the trial court concluded that the (d)(1) exclusion includes a foreign corporation's investment in the long-term debt owed to it by Alabama corporations or other foreign corporations that also pay Alabama franchise tax, it also concluded that Sonat was entitled to a(d)(1) exclusion based upon *Page 420 
the long-term debt owed to it by SEC and SODI.
Regarding the Department's contention that Citrus and SODI were not doing business in Alabama during the tax years at issue, the trial court stated as follows:
 "The franchise tax is an 'excise tax for the privilege of exercising corporate functions in Alabama.' Consolidated Coal Co. v. State, 236 Ala. 489, 491, 183 So. 650, 651 (1938). Foreign corporations are liable for franchise tax under § 40-14-41(a) if they are 'doing business' in Alabama. Although the Code of Alabama does not define what is meant by the phrase 'doing business,' § 40-14-41(a) does provide that
 " '[c]orporations which have qualified to do business in this state shall for the purpose of [Title 40] prima facie be held to be doing business in Alabama. . . .' (emphasis added)
 "Citrus qualified to do business in Alabama on May 18, 1987, and remained so qualified during each of the tax years here at issue. Likewise, SODI qualified to do business in Alabama on March 3, 1978, and remained so qualified during each of the tax years here at issue. Accordingly, Citrus and SODI are presumed to be doing business in Alabama, and the Department has presented no evidence to rebut this presumption.
 "Further, the many Alabama court decisions defining what constitutes 'doing business' clearly establish that Citrus and SODI were doing business in Alabama. 'Doing business' was clearly and simply defined by the Alabama Supreme Court as follows:
 " 'There must be a doing of some of the works, or an exercise of some of the functions, for which the corporation was created, to bring the case within that clause.'
 "Beard v. Union Am. Publishing Co., 71 Ala. 60, 62 (1881), quoted with approval in Friedlander Bros., Inc. v. Deal, 218 Ala. 245, 246, 118 So. 508, 509 (1928). And a few years later, the Alabama Supreme Court stated:
 " 'The real test is . . . is the corporation engaged in the transaction of business, or any part thereof, it was created and organized to transact? If it be, it "does business" within the meaning of the constitution.'
 "Sullivan v. Sullivan Timber Co., 103 Ala. 371, 380, 15 So. 941, 944 (1894). Therefore, if the acts performed by the corporation in Alabama are within its corporate functions, the corporation is doing business in Alabama. Further, if a corporation exercises its corporate functions in Alabama, it is liable for franchise tax, regardless of the amount of business done. State v. Southern Natural Gas Corp., 233 Ala. 81, 88, 170 So. 178, 184 (1936), aff'd, 301 U.S. 148, 57 S.Ct. 696, 81 L.Ed. 970
(1937).
 "While it may be true that not every act done within a corporation's powers constitutes the doing of business, Citrus and SODI have done those acts that constitute doing business and that require them to pay a franchise tax. Friedlander Bros., Inc. v. Deal, 218 Ala. at 247, 118 So. at 510. As stated by the Alabama Supreme Court:
 " 'In passing on the question of whether it is so doing [business], having qualified in Alabama, the court will not make any fine distinctions between corporate powers and corporate functions. Doing any sort of authorized business in this State by a qualified foreign corporation is sufficient to subject it to the franchise tax on its capital employed in Alabama.'
 "Hollingsworth Whitney Co. v. State, 241 Ala. 96, 98, 1 So.2d 387, 389 (1941). The essential element of doing business is the exercise of some business that is authorized by a corporation's charter. Wisconsin Coosa Co. v. State, 231 Ala. 543, 544, 165 So. 838, 838 (1936)."
The trial court concluded that because Citrus and SODI had "performed essential corporate functions" in Alabama and SODI had owned and leased property in Alabama, each corporation was doing business in Alabama from the date of its qualification through the tax years at issue; and, therefore, that Sonat was entitled to a(d)(1) exclusion for its investment in the capital stock of Citrus and SODI.
After reviewing the record and the applicable law, this court agrees with the *Page 421 
trial court that the provision in § 40-14-41(d)(1) allowing a foreign corporation to exclude from its capital base its investment in the "capital" of Alabama corporations and foreign corporations that pay Alabama franchise tax is not limited to the foreign corporation's investment in another corporation's "capital stock." The term "capital" in the (d)(1) exclusion also includes a foreign corporation's investment in the long-term debt owed to that corporation by an Alabama corporation or a foreign corporation that pays Alabama franchise tax. We also agree with the trial court that Citrus and SODI were doing business in Alabama and paid franchise tax. Finally, we agree with the trial court that Sonat was entitled to exclude from its capital base, pursuant to the (d)(1) exclusion, its investment in the capital of SEC, SODI, and Citrus, including the long-term debt owed to Sonat by SEC and SODI.
Let the judgment be affirmed.
The foregoing opinion was prepared by SAM A. BEATTY, Retired Justice, Supreme Court of Alabama, while serving on active duty status as a judge of this court under the provisions of §12-18-10(e), Ala. Code 1975.
AFFIRMED.
All the judges concur.
[1] Sonat filed its claims for a refund of taxes paid in 1989 and 1990 more than three years after it filed its franchise tax returns for those years. The 1989 and 1990 petitions for refund, therefore, were not timely filed pursuant to §40-2A-7(c)(2)a., Ala. Code 1975. The trial court denied Sonat's 1989 and 1990 claims, and Sonat does not cross appeal that decision.