ROBERTSON, Presiding Judge.
The Alabama Department of Revenue (“the Department”) appeals from a judgment in favor of Sonat, Inc., ordering the Department to set aside its final 1988 corporate income tax assessment against So-nat and to refund $12,163,702.00 plus interest in corporate income tax collected from Sonat as a result of the assessment. We reverse.
This appeal involves the interpretation of § 40-18-35, Ala.Code 1975, which specifies several items that are deductible from a corporation’s income when computing its income tax liability. Among these items is a deduction for dividends received from certain affiliated corporations:
“(a) ... In computing the net income of foreign corporations doing business in this state ... there shall be allowed as deductions ...
“(14) The amounts received ... as dividends ... from a corporation or any subsidiary corporation which is ... taxable under this chapter upon its net income ... if at the time of the receipt of such dividends the corporation receiving such dividends is the owner of stock in the corporation distributing such dividends:
“a. Possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote; and
“b. Constituting at least 50 percent of the total number of shares of all classes of stock other than classes of stock which are limited and preferred as to dividends.... ”
Ala.Code 1975, § 40-18-35(a)(14) (emphasis added).
Sonat is a corporation engaged in the production, storage, and transmission of natural gas, and the marketing of natural gas and oil field services through its subsidiaries. It is organized under the laws of Delaware, but does business in Alabama. One of its many wholly owned subsidiaries, Sonat Offshore Drilling, Inc. (“SODI”), is a Delaware corporation doing business in Texas; SODI qualified to do business in Alabama in 1978. SODI’s primary business is offshore oil and natural gas drilling on a contract basis outside Alabama.
During the 1980s, SODI paid substantial sums to Sonat representing corporate dividends. Sonat, in turn, reported these dividends to the Department and deducted the amounts thereof from its taxable income. Between 1981 and 1985, SODI paid dividends to Sonat totalling $79,858,588, none of which Sonat reported as taxable.
On December 21, 1981, in the same year SODI paid its first dividend to Sonat, SODI entered into a lease agreement with Southern Natural Gas Company (“SNG”), another wholly owned Sonat subsidiary, whereby SODI leased to SNG certain office furnishings located in SNG’s Birmingham office. The office furnishings lease was for a one-year term, from July 1, 1981, to June 30, 1982; it was terminable at the will of either party; and it was automatically renewable on each anniversary of its commencement date. The lease specified an annual rent of $1,740.
SODI’s 1981 Alabama income tax return indicated that its aggregate net income from all sources, as reported on its federal *1208 corporate income tax return, was $28,750,-535. Of this amount, SODI reported its Alabama income as $168, representing the $870 it derived from its office furnishings lease to SNG less depreciation expense of $707. SODI’s Alabama income tax liability for 1981 thus amounted to $8.15, as shown on its Alabama return. A similar pattern appears in SODI’s subsequent Alabama tax returns. In each year from 1982 to 1985, years for which SODI reported an aggregate federal net income of $60,585,-579, $52,098,619, $6,689,428, and -$9,040,-192, it reported an Alabama income of either $327 or $328 and reported an Alabama tax liability of either $16.35 or $16.40.
In 1988, SODI paid a dividend to Sonat of $185,000,000, which Sonat deducted from its taxable income on its Alabama income tax return. In the same year, SODI’s Alabama income tax return reported an aggregate federal net income of $432,550,913. However, the only Alabama income SODI reported was the $1,740 derived from its office furnishings lease to SNG, and SODI reported an Alabama tax liability of $87 on that amount.
Subsequently, the Department conducted a field audit on Sonat and its affiliates, which audit included Sonat’s 1988 income tax return. After its examination, the Department disallowed Sonat’s deduction of the $185,000,000 dividend it had received from SODI, concluding, among other things, that Sonat had set up the SODI/ SNG office furnishings lease to avoid paying taxes on SODI’s dividend payments. Pursuant to its disallowance of the SODI dividend deduction, the Department issued a final assessment against Sonat in the amount of $12,153,702, representing $8,217,341 additional tax due, plus interest on that amount from March 15,1989.
Sonat appealed the final assessment to the trial court pursuant to § 40-2-7, Ala. Code 1975, and filed in that court a complaint on appeal, asserting that § 40-18-35(a)(14) permitted it to deduct SODI’s dividend payment from its 1988 income tax return. Sonat amended its complaint to allege that Alabama’s adoption of the Mul-tistate Tax Compact, 1967 Ala. Acts. No. 395, allowed Sonat to utilize “combined reporting” of income from its “unitary business,” which method of reporting, it contended, would reduce its overall income tax liability by $1,898,882. Upon the trial court’s direction, the parties prepared and filed a stipulation of facts and supporting documents, and the trial court held a hearing at which it received ore tenus evidence, principally concerning Sonat’s entitlement to “combined reporting.” After this hearing, the trial court entered a judgment in favor of Sonat, setting aside the Department’s final assessment and directing a refund of the additional tax and interest. The Department appeals.
Although the trial court heard ore tenus evidence before entering its judgment, the testimony received by the trial court was directed to the “combined reporting” issue. The trial court based its judgment concerning the application of § 40 — 18—35(a)(14) upon the parties’ extensive factual stipulations. Construction of § 40 — 18—35(a)(14) is a legal question, and we review the trial court’s judgment as to this issue with no presumption of correctness. See Sizemore v. Franco Distrib. Co., 594 So.2d 143, 147 (Ala.Civ.App.1991) (rejecting presumption of correctness in tax refund action brought as original proceeding in circuit court).
Alabama’s income tax deduction for in-tercorporate dividend payments dates from this state’s first effective income tax legislation in 1933. See 1933 Ala. Acts No. 169. In Section 26 of the original income tax statute, the legislature allowed corporations subject to the new tax a deduction for “[t]he amounts received as dividends from a corporation, or any subsidiary corporation of which the parent corporation owns as much as 50 per cent of the capital stock, which is taxable under this Act wpon the net income of the parent corporation or the subsidiary.” Id. at § 26(6) (emphasis added). This exemption would later be codified as Title 51, § 402(6) of the 1940 Code of Alabama.
*1209 Our supreme court later considered the meaning of this exemption in Sparks v. West Point Mfg. Co., 274 Ala. 102, 145 So.2d 816 (1962). In Sparks, a domestic corporation attempted to deduct dividends it had received from a foreign subsidiary, which subsidiary had done no business in Alabama and had paid no income taxes in Alabama. The Sparks court rejected the taxpayer’s contention that the dividends were deductible under § 402(6); after noting that the deduction clause “was not artfully drawn” and contained “careless language and grammatical errors,” our supreme court concluded that its “general purpose is to prevent double taxation.” Sparks, 274 Ala. at 104, 145 So.2d at 817. The Sparks court then summarized its construction of the deduction statute as follows:
“A domestic corporation, in computing its net income for state income tax purposes, is permitted to deduct the amounts received as dividends from another corporation ‘which is taxable under this title’ upon its net income. If the dividend paying corporation pays income tax on its income to the State of Alabama, then a domestic corporation which owns stock in that corporation may deduct amounts received as dividends on the stock so owned. It matters not whether the dividend-paying corporation is domestic or foreign if it pays income tax to the State of Alabama on its earnings. A foreign corporation which carries on its business in this state can be subject to the state income tax laws.
“Where a domestic corporation owns stock in a subsidiary corporation, that is, a corporation of which another corporation owns as much as fifty per cent of its capital stock, the said domestic corporation may deduct the dividends it receives from the subsidiary corporation, provided either the subsidiary corporation or its parent corporation pays state income taxes on the income of the subsidiary corporation.
“In the instant case, the taxpayer ... is the parent corporation, owning more than fifty per cent of the capital stock of its foreign subsidiary. Neither the parent corporation, the taxpayer, nor the subsidiary corporation has paid income taxes to the State of Alabama on the income of the subsidiary. Hence, the taxpayer is not entitled to deduct the dividends which it received from its subsidiary.”
274 Ala. at 104-05, 145 So.2d at 817-18 (emphasis added). Thus, in spite of the use of the term “taxable” in the statute, which could potentially be read merely as “subject to Alabama’s taxing power,” the Sparks court interpreted § 402(6) to apply only to distributions by corporations who have actually paid Alabama income tax on their earnings.
Since Sparks was decided, a new Code of Alabama has been compiled, and the language of the statute affording the deduction has been slightly altered. For example, unlike Ala.Code 1940, Tit. 51, § 402(6), that new Code, Ala.Code 1975, § 40-18-35(a)(14), leaves no doubt that (1) only when 50% of a corporation’s stock is owned by the corporate income taxpayer are its dividends deductible; (2) otherwise qualified liquidating dividends of corporations are deductible to corporate income taxpayers; and (3) qualified dividends are deductible regardless of whether they are received as cash or property. However, although Sonat argues to the contrary, the principal prerequisites for deductibility have not been altered since Sparks: the amounts claimed as deductible intercorporate dividends must still be received from a corporation which is “taxable” upon its “net income” under Alabama’s income tax statutes. We note that the legislature’s reenactment of the dividend deduction without significant change in the language construed in Sparks constitutes a legislative adoption of that construction. See United States Steel Corp. v. Goodwin, 267 Ala. 612, 613, 104 So.2d 333, 334 (1958) (“Authorities are legion announcing the rule that ‘unless a contrary intent appears, the re-enactment of a statute which has been judicially construed, is an adoption of the construction’ ”).
*1210 Relying upon a literal construction of § 40-18-35(a)(14) in pari materia with §§ 40-18-2(2) and 40-18-2(3), Ala.Code 1975, Sonat argues that the dividends it received from SODI are deductible. Sonat contends that during 1988, SODI was qualified to do business in Alabama, did business in Alabama, and derived income from Alabama sources, and it concludes that SODI’s net income was therefore “taxable” by Alabama in 1988.[1]
We do not believe that Sparks permits such a broad interpretation of the deduction set forth in § 40-18-35(a)(14). As Sparks notes, the purpose of granting an Alabama income tax deduction for dividends paid by a subsidiary corporation is to prevent those amounts from being taxed more than once. It follows that this rationale is not implicated when as in Sparks the subsidiary corporation’s earnings have never actually been taxed in Alabama. Here, SODI held precisely one income-producing corporate asset in Alabama in 1988 — its office furnishings lease to SNG, another Sonat affiliate. SODI received income of $432,550,913 in 1988, of which $432,549,173 has not been subjected to Alabama income taxation, and SODI paid a total of $87 in income taxes to Alabama in 1988. This minimal payment of taxes does not even approach the level of a “double taxation” of SODI’s overall earnings, and while it may fall within the letter of § 40-18-35(a)(14), it falls well outside its spirit and intent, which we must uphold above all else. See Bell v. Pritchard, 273 Ala. 289, 292, 139 So.2d 596, 598 (1962) (“The courts are not controlled by the literal meaning or language of a statute but by its spirit and intention.”).
We conclude that SODI’s de minimis involvement in Alabama does not render SODI’s net income “taxable” in Alabama under Sparks so that Sonat, its corporate parent commercially domiciled in Alabama, may deduct SODI’s $185,000,000 dividend payment. Our conclusion is only strengthened by our duty to construe strictly in favor of the taxing authority statutes that authorize deductions and exemptions from taxation. See, e.g., Community Action Agency v. State, 406 So.2d 890, 893-94 (Ala.1981). We therefore agree with the Department that the trial court’s allowance of Sonat’s dividend deduction on the basis of § 40-18-35(a)(14) was erroneous.
In its brief on appeal, Sonat has also addressed whether it was entitled to utilize “combined reporting” of income received by it and its subsidiaries. The trial court’s judgment does not address this issue, although it was raised below. Of course, this court may affirm a correct judgment on grounds other than those relied upon by the trial court (e.g., Steiger v. Huntsville City Bd. of Educ., 653 So.2d 975, 977 (Ala.1995)). However, we need not address this issue, because even if we were to agree with Sonat that it was entitled to report its and its subsidiaries’ 1988 income together, the judgment would nonetheless be erroneous to the extent that it directed a refund greater than $1,898,882, the amount that Sonat stated in its amended complaint that it overpaid as a result of its and its affiliates’ filing separate returns. We deem it prudent in this particular case to leave to the trial court the initial determination whether Sonat is entitled to a smaller refund on grounds different from the dividend deduction relied upon in the judgment before us.
For the foregoing reasons, we reverse the judgment of the trial court and remand the cause for further proceedings.
REVERSED AND REMANDED.
YATES, MONROE, and CRAWLEY, JJ., concur.
THOMPSON, J., concurs in the result.

. We note that State Dep’t of Revenue v. Sonat, Inc., 690 So.2d 412 (Ala.Civ.App.1997), involved SODI’s corporate status in 1989 and succeeding years and does not preclude the Department’s arguments in this case, which involve SODI’s status in 1988 only.